UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
COURT FILE NO.: 24-42

| | |
|---|---|
| Elizabeth Collins Dueland,<br><br>        Plaintiff,<br>v.<br><br>McGrath Automotive Group, Inc. d/b/a McGrath Chrysler Jeep Dodge Ram,<br><br>        Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of McGrath Automotive Group, Inc. d/b/a McGrath Chrysler Jeep Dodge Ram (hereinafter "Defendant") violations of the Truth In Lending Act, 15 U.S.C. § 1601 et seq., Intentional Infliction of Distress, Invasion of Privacy and Defamation.

## JURISDICTION

2. The Court has subject matter jurisdiction because this lawsuit arises out of consumer transactions occurring in Johnson County, Iowa.

3. Jurisdiction of this Court arises under 15 U.S.C. § 1601 and 28 U.S.C. § 1331.

4. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. Elizabeth Dueland is an adult citizen residing in Coralville, Iowa.

6. Defendant is a Delaware corporation, established and headquartered at 32 Loockerman Square, Suite L100, Dover, DE 19901 in 1975.  Defendant is an automotive group that owns and operates car dealerships, including McGrath Chrysler Jeep Dodge Ram.  Defendant has a registered agent of service located at 1040 North Center Point Road, Hiawatha, IA 52233.

## STATEMENT OF FACTS

**The Sonata Agreement**

7. In early February 2023, Plaintiff began looking to purchase a new vehicle.

8. On February 14, 2023, Plaintiff entered into an Iowa Vehicle Retail Installment Contract with Defendant for the purchase of a 2014 Hyundai Sonata.

9. Plaintiff purchased the vehicle for personal, family, or household purposes.

10. The retail installment contract contains an itemization of the amount financed section.  In this section, there is a subsection labeled "Amounts Paid To Others." Under the breakdown, bullet point *k includes a $349 charge without listing what the charge is for or who it is paid to.

11. On the Motor Vehicle Purchase Agreement, there is a charge of $349 labeled as miscellaneous.  The plaintiff later discovered the charge was for window tint. Plaintiff never wanted or agreed to purchase window tint nor was she aware that Defendant charged her for window tint at the time she purchased the vehicle.

12. Plaintiff did agree to and received a $199 oil maintenance package with the Sonata as shown on the Itemization of Amount to be Financed.

13. As such that was a violation of TILA and specifically the misrepresentation related to the amount financed.

14. Between February 14 and March 20, 2023, Plaintiff experienced difficulties with the Sonata that required her to bring the car to a mechanic three times.

15. On one occasion, one of the Sonata's tires became so flat Plaintiff had to get the vehicle towed to a garage at an expense to her of $722.37.

16. On March 20, 2023, Plaintiff and her son met with Defendant's sales representative to negotiate trading in the Sonata for another vehicle.

**The Equinox Agreement**

17. On March 21, 2023, Plaintiff visited Defendant to trade in the Sonata for a 2013 Chevrolet Equinox.

18. On March 21, 2023, Plaintiff entered into a Motor Vehicle Purchase Agreement with Defendant for the purchase of the 2013 Chevrolet Equinox ("Equinox Purchase Agreement").

19. Equinox Purchase Agreement identified the "cash down payment or credit balance" as $1,697.07.

20. In addition to the Equinox Purchase Agreement, Plaintiff entered into an Iowa Vehicle Retail Installment Contract ("Financing Agreement") that outlined the annual percentage rate, finance charge, amount financed, total of payments, total sale price, total monthly payments, and price per monthly payment.

21. Plaintiff understood that the numbers and percentages outlined in the retail installment contract were subject to change because First Federal Credit Union ("Frist Federal"), the credit union assigned to the contract, was closed at the time she signed the installment contract.

22. On March 21, 2023, Plaintiff executed the Equinox Purchase Agreement by handwriting her signature.

23. On March 21, 2023, Defendant's employee executed the Equinox Purchase Agreement on behalf of Defendant.

24. The bottom of the Equinox Purchase Agreement signed by Plaintiff and Defendant's employee contains the following:

> "You understand that this agreement (including the terms on page 2) is an offer to purchase the vehicle describe which will be come a binding contract once the dealer has signed it. This document represents the complete agreement between you and the dealer regardless of any other oral, written, or prior agreements or representations…"

25. On March 21, 2023, Plaintiff finalized the purchase, executed the final version of the Retail Installment contract and left with the Equinox.

26. Despite this final agreement First Federal wanted to alter the terms of the Financing Agreement.

27. On March 23, 2023, Plaintiff received a text message from Defendant's employee, Michael Gunn, explaining that First Federal had approved new terms on the Financing Agreement that were ready for Plaintiff's signature.

28. On March 25, 2023, Plaintiff and Defendant signed the new Financing Agreement based on the new terms First Federal changed.

29. On March 27, 2023, Plaintiff started receiving calls, voicemails, texts, and emails from multiple Defendant's employees stating that the Equinox purchase agreement was incorrect.

30. Specifically, Defendant's agent, Gunn, explained in an email that on the right side of Equinox Purchase Agreement the "cash down payment or credit balance" displayed $1,697.07 when it should be $1,397.07 from the GAP contract on the Sonata thereby admitting the violation of the TILA.

31. Defendant's agent, Gunn offered to correct this error by changing the GAP amount on the lower left part of Equinox Purchase Agreement to reflect $1,200 and asked when Plaintiff would be free to sign a new purchase agreement reflecting the correction.

32. Plaintiff reviewed all documents from Defendant, including the Equinox Purchase Agreement and the Finance Agreement, to see what Gunn was talking about.

33. While revieing the documents, Plaintiff noticed that the $199 oil maintenance package she purchased with the Sonata did not transfer to the Equinox as she was told it would.

34. After reviewing the documents, Plaintiff decided not to sign a second purchase agreement for the Equinox and not to pay an additional $300 due to Defendants error.

35. Defendant's employees then continued to harass Plaintiff with repeated phone calls and text messages.

36. On April 3, 2023, Plaintiff received threats via text that the car was not legally hers until she signed the second Equinox purchase agreement.

37. Plaintiff was employed as the Executive Chef / Culinary Director at Keystone Place at Forever Green senior living facility.

38. On April 3, 2023, Plaintiff was at work when her co-workers informed her that one of Defendant's employee, Johnathon Christensen, was in the lobby and would not leave until he met with Plaintiff.

39. Christensen came to Plaintiff's work even though she told him she was unavailable.

40. Christensen refused to leave when asked by Plaintiff's co-workers and told the co-workers that if Plaintiff did not sign the new purchase agreement he would call the police to report the Equinox as stolen.

41. Christesen's statements made to Plaintiff's co-workers were defamatory and defamation per se causing extreme emotional distress to Plaintiff in addition to humiliation, embarrassment and fear.

42. Defendant's conduct by and through its agents and managers caused Plaintiff loss of sleep, anxiety, headaches, nausea, fear, and intimidation.

43. Defendant's agent, Christensen bombarded the receptionist where Plaintiff works with questions about Plaintiff's work schedule, making the receptionist and eventually Plaintiff extremely uncomfortable and scared for her safety and liberty.

44. On April 4, 2023, Plaintiff went back to the dealership and spoke with Kristen the General Manager. Kristen apologized for the April 3rd events at Plaintiff's place of

employment, acknowledge the misconduct, explained that they had terminated the employee, and offered to reimburse Plaintiff for the oil maintenance contract that was not transferred, the window tint, and the Sonata flat tire and towing bill.

**RESPONDEAT SUPERIOR LIABILITY**

62.     The acts and omissions of Defendants, and/or the agents of Defendants who communicated with Plaintiff – further described herein – were committed within the time and space limits of their agency relationship with their principal, Defendants.

63.     The acts and omissions by Defendants and/or these other agents were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendants in furnishing consumer credit information and collecting consumer debts.

64.     By committing these acts and omissions against Plaintiff, these other agents were motivated to benefit their principal, Defendants.

65.     Defendants is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of federal law by its agents and employees, including but not limited to violations of the FCRA, in their attempts to collect this debt from Plaintiff.

**STANDING**

66.  Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

     a. a valid injury in fact;

     b. which is traceable to the conduct of Defendants;

     c. and is likely to be redressed by a favorable judicial decision.

See *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To meet the standard laid out in Spokeo and Lujan, Plaintiff must allege facts demonstrating all three prongs above.

The "Injury in Fact" Prong

67.  Plaintiff's injury in fact must be both "concrete" and "particularized" to satisfy the requirements of Article III of the Constitution, as laid out in Spokeo. Id.

68.  For an injury to be "concrete" it must be a de facto injury, meaning that it exists. In the present case, Defendants engaged in violative conduct under the FCRA. Such conduct and attempts to collect debt are an invasion of Plaintiff's privacy and caused Plaintiff to suffer emotional distress and a reduced credit score.

69.  For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." Spokeo, 136 S. Ct. at 1548.  In the instant case, Plaintiff personally suffered emotional distress and reduced credit.

The "Traceable to the Conduct of Defendant" Prong

70. The second prong required to establish standing at the pleadings phase is that the Plaintiff must allege facts to show that the Plaintiff's injury is traceable to the conduct of Defendants.

71. In the instant case, this prong is met simply by the fact that the violative conduct contemplated in this Complaint was initiated by Defendants directly, or by Defendant's agent at the direction of Defendants.

The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong

72. The third prong to establish standing at the pleadings phase requires the Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

73. In the present case, Plaintiff's Prayers for Relief include a request for statutory and actual damages. The damages were set by Congress and specifically redress the damages suffered by Plaintiff. Furthermore, the award of monetary damages redresses the injuries of the past and prevents further injury by Defendants in the future.

74. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Plaintiff has standing to sue Defendants on the stated claims.

TRIAL BY JURY

75. Plaintiff is entitled to and hereby respectfully demands a trial by jury. U.S. Const. Amend. 7.  Fed.R.Civ.P. 38.

## Causes of Action

### COUNT I.

### VIOLATION OF THE TRUTH-IN-LENDING ACT – 15 U.S.C. § 1601 et seq

45. Plaintiff incorporates the above paragraphs by reference.

46. When entering into a consumer credit transaction, the Truth-In-Lending Act requires that creditors provide consumers with certain disclosures that are made in a clear and conspicuous manner regarding their loan. *See* 12 C.F.R. § 1026.40(a)(1) and 15 U.S.C. § 1637 for open-end consumer credit transactions secured by the consumer's principal dwelling. *See* 12 C.F.R. § 1026.17(a)(1) and 15 U.S.C. § 1638 for closed-end consumer credit transactions.

47. Where any of the consumer's material disclosures are not given in conformity with TILA or Regulation Z, a consumer may seek actual damages (15 U.S.C. § 1640(a)(1)), statutory damages in the amount of twice the finance charge up to $4,000 (15 U.S.C. § 1640(a)(2)(A)), and attorney's fees (15 U.S.C. § 1640(a)(3)).

48. Absent initial or updated disclosures, the new charge was improperly disclosed in violation of 15 U.S.C. § 1638(a)(3) and Reg. Z § 1026.18(d).

49. As a result of Defendant's violations of the Truth-In-Lending Act, Plaintiff has suffered damages and injury, and Defendant is liable for statutory damages in the amount of $4,000 (15 U.S.C. § 1640(a)(2)(A)), actual damages (15 U.S.C. § 1640(a)(1)), and reasonable attorney fees for the costs of this action (15 U.S.C. § 1640(a)(3)).

## COUNT II.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

50. Plaintiff incorporates the above paragraphs by reference.

51. Under Iowa law, to state a cause of action for intentional infliction of emotional distress, a complaint must allege four elements: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress, and (4) the distress was severe.

52. Defendant's attacks and threats as described above against Plaintiff were extreme and outrageous.

53. Defendant's attacks and threats as described above against Plaintiff were intentional.

54. Defendant's attacks and threats as described above caused Plaintiff emotional distress that was severe.

55. As a result of Defendant's attacks and threats as described above, Plaintiff has suffered extreme fear, paranoia, emotional distress, and out-of-pocket loss and is entitled to an award of actual damages in an amount to be determined at trial.

## COUNT III.

### INVASION OF PRIVACY

56. Plaintiff incorporates the above paragraphs by reference.

57. Defendant intentionally intruded upon Plaintiff's solitude, seclusion, and private concerns and affairs throughout its illegal attempt to locate Plaintiff, have her sign

a contract, sending her repeated threatening text messages and voicemail messages, and showing up at her place of employment.

58. Defendant's intrusion was substantial, highly offensive to Plaintiff, and would be highly offensive and objectionable to any reasonable person in Plaintiff's position.

59. Plaintiff had a legitimate expectation of privacy in her solitude, seclusion, and private concerns and affairs.

60. As a result of Defendant's intrusion, Plaintiff has suffered headaches, loss of sleep, nausea, depression, embarrassment, humiliation, anxiety, fear, hopelessness, emotional distress, out-of-pocket loss, and is entitled to an award of actual damages in an amount to be determined at trial.

## COUNT IV.

## DEFAMATION

61. Plaintiff incorporates the above paragraphs by reference.

62. Defendant falsely communicated to several parties, that Plaintiff owed a debt when both knew or should have known the debt was not Plaintiff's obligation.

63. Defendant's false communications, acts, and omissions resulted in defamation of the Plaintiff.

64. Defendant's false communications, acts, and omissions harmed the reputation of Plaintiff.

65. Defendant's false communications were the type that would and/or do deter third persons from associating or dealing with Plaintiff

66. Defendant's communications were the type that would injure Plaintiff's character,

or subject her to ridicule, contempt, distrust, or would degrade her in the eyes of another.

67. Plaintiff has been seriously damaged as a result and is entitled to damages, costs, and attorneys' fees.

## JURY TRIAL DEMAND

68. Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant for:

- Statutory damages as provided by 15 U.S.C. § 1640(a)(2)(A), for Defendant's failure to disclose any of the requisite disclosures pursuant to 12 C.F.R. §§ 1026.18 and 1026.19;
- Actual damages, as provided by 15 U.S.C. § 1640(a)(1), in an amount to be determined, which include costs and fees that the Plaintiff paid, and any interest or finance charges that were wrongfully assessed;
- Reasonable attorney fees for the costs of this action as provided by 15 U.S.C. § 1640(a)(3).
- Actual damages and punitive damages for Defendant's intentional infliction of emotional distress, invasion of privacy and defamation, in an amount to be

- determined at trial; and
- for such other and further relief as the Court may deem just and proper.

Dated this 31st day of May 2024.

Respectfully submitted,

By: /s/ Nicole Hughes
Nicole Hughes, AT10002263
TELPNER PETERSON LAW FIRM, LLP
25 Main Place, Suite 200
Council Bluffs, IA 51503
Telephone: (712) 325-9000
Facsimile: (712) 328-1946
nhughes@telpnerlaw.com
*[Local Counsel]*

Thomas J. Lyons, Jr., Esq.
Attorney I.D. #: 249646
CONSUMER JUSTICE CENTER, P.A.
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile:   (651) 704-0907
tommy@consumerjusticecenter.com
*[To Be Admitted Pro Hac Vice]*

***ATTORNEYS FOR PLAINTIFF***

## VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

I, Elizabeth Collins Dueland, having first been duly sworn and upon oath, depose and say as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all the facts contained in it are true, to the best of my knowledge, information, and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not intended for any improper purpose, such as to harass the Defendants, cause unnecessary delay to the Defendants, or create a needless increase in the cost of litigation to the Defendants named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

Dated this 24th day of May 2024.

/s/ Elizabeth Collins Dueland

Elizabeth Collins Dueland